IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

PAUL M. WAMEGO,                       )
                                      )
            Plaintiff,                )
                                      )
v.                                    )   Case No. CIV-14-538-KEW
                                      )
CAROLYN W. COLVIN, Acting             )
Commissioner of Social                )
Security Administration,              )
                                      )
            Defendant.                )

## OPINION AND ORDER

Plaintiff Paul M. Wamego (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on September 10, 1959 and was 54 years old at the time of the ALJ's decision. Claimant obtained his GED. Claimant has worked in the past as a window washer and forklift operator. Claimant alleges an inability to work beginning March 8, 2012 due to limitations resulting from low back pain, shoulder pain, and mental problems.

**Procedural History**

On March 9, 2012, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On September 12, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") Gene M. Kelly in Tulsa, Oklahoma. He issued an unfavorable decision on November 14, 2013. The Appeals Council denied review of the ALJ's decision on October 17, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to provide a proper analysis at steps four and five; (2) failing to properly evaluate the medical source evidence; and (3) failing to perform a proper credibility determination.

**Step Four and Five Evaluation**

In his decision, the ALJ found Claimant suffered from the severe impairments of depression, anxiety, personality, back, neck, hips, legs, knees, feet, elbow, hepatitis C, liver, hypertension, headache, shoulder, hernia, and substance abuse. (Tr. 52). The ALJ determined Claimant retained the RFC to perform light work. In so doing, the ALJ found Claimant could lift/carry 20 pounds; stand/walk six hours in an eight hour workday; sit for six hours in an eight hour workday. Claimant could perform work requiring occasional climbing, bending, stooping, kneeling, squatting, crouching, crawling, pushing and/or pulling with the right upper extremity, operating foot controls, and reaching to the right side with the right upper extremity. Claimant was found by the ALJ to be able to perform work requiring occasional twisting of the head to the right and twisting of the torso. Claimant was slightly limited in the ability to finger, feel, and grasp. He required a low light work environment. Claimant should avoid rough uneven surfaces, unprotected heights, and fast and dangerous machinery. Claimant should also avoid cold work environments. He was able to perform simple, repetitive, routine work, with limited contact with the public, co-workers, and supervisors. (Tr. 54).

After consulting with a vocational expert, the ALJ concluded that Claimant could perform the representative jobs of hotel

housekeeper and surveillance systems monitor, both of which the ALJ determined existed in sufficient numbers in both the regional and national economies. (Tr. 58). As a result, the ALJ determined Claimant was not under a disability since March 9, 2012, the date the application was filed. (Tr. 59).

Claimant contends the testimony of the vocational expert identified the hotel housekeeping job as one Claimant could perform when the RFC precludes such employment. Specifically, Claimant was limited by the ALJ to occasional reaching to the right side with the right upper extremity. (Tr. 54). The *Dictionary of Occupational Titles ("DOT")* provides that the hotel housekeeping job requires frequent reaching 1/3 to 2/3 of the time. *DOT* #323.687-014. Occasional activity requires use up to 1/3 of the time. Id. This Court has not been directed to any case or regulatory authority which defines reaching as to be with either extremity rather than both extremities.

The vocational expert's testimony appears to conflict with the *DOT* and she did not provide an explanation for the conflict. The ALJ is required to investigate and elicit a reasonable explanation for any conflict. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999). On remand, the ALJ shall obtain an explanation from the vocational expert for the apparent deviation from the *DOT*.

Claimant also contends he cannot perform the job of

surveillance system monitor because it requires a reasoning level of 3 according to the *DOT*. Reasoning level 3 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *DOT*, App. C. This definition would appear to conflict with Claimant's RFC incorporating a limitation to simple, repetitive, routine work, with limited contact with the public, co-workers, and supervisors. (Tr. 54). On remand, the ALJ should explore this conflict and obtain an explanation from the expert for the inconsistency.

### Evaluation of Medical Source Evidence

On April 11, 2012, Dr. Kenny A. Paris performed a consultative mental evaluation of Claimant. He diagnosed Claimant with Alcohol Dependence, with physiological dependence and Major Depressive Disorder, Single Episode, Moderate with a GAF of 45. (Tr. 289). Claimant asserts that the ALJ should have considered this low GAF in his findings.

Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116,

1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF between 31 and 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." A GAF between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to discuss every piece of evidence in the record. Clifton v. Chater,

79 F.3d 1007, 1009-10 (10th Cir. 1996). A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002).

This Court cannot attribute error to the ALJ's decision based upon the ALJ's discussion of Claimant's GAF score. He found the score to be an anomaly in light of the other evidence and content of Dr. Paris' report. (Tr. 56). This is not error.

Claimant also asserts the ALJ failed to properly weigh Dr. Paris' opinion. He discussed Dr. Paris' findings and then concluded "[t]he evidence from Dr. Paris does not contradict the residual functional capacity above." (Tr. 56). He repeats this statement with regard to several other consultative examiners. (Tr. 56-57).

"'It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions,' including the opinions of state agency medical consultants. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted). But the need for express analysis is weakened '[w]hen the ALJ does not need to reject or

9

weigh evidence unfavorably in order to determine a claimant's RFC.' Id. at 1162. And an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity. See id. at 1162-63. In that case, the claimant is not prejudiced 'because giving greater weight to [the opinion] would not have helped her.' Id. at 1163." Mays v. Colvin, 739 F.3d 569, 578-79 (10th Cir. 2014).

As recognized by the ALJ, no inconsistency exists between the RFC and Dr. Paris' opinion, save for the GAF score which the ALJ explained was inconsistent with the record. The failure to provide an express weight to this opinion represents harmless error.

Claimant attempts to create inconsistency when he recites a statement in Dr. Paris' report indicating Claimant's "ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers is estimated to be below average." (Tr. 289). While the ALJ did not address this statement, this Court does not perceive that it alters the RFC since it accommodates working with others and limits Claimant to simple work.

### Credibility Determination

The ALJ found Claimant was not "entirely credible." (Tr. 55). He based this conclusion on the inconsistencies between Claimant's

stated restrictions and activities and the findings by Dr. Paris through his interview and examination and the other expert assessment - Dr. Traci Carney and Dr. Charles Fullenwider. (Tr. 55-57).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or

other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). This Court finds that the ALJ's findings on credibility are affirmatively linked to the objective record and is supported by substantial evidence.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 29th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE